FANNY GILLESPIE, PLAINTIFF-RESPONDENT, v. REBA PLOTKA, INDIVIDUALLY, AND REBA PLOTKA, EXECUTRIX OF THE ESTATE OF MAX PLOTKA, DEFENDANT-PROSECUTOR.

Submitted May 15, 1931—Decided November 16, 1931.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the plaintiff, *Samuel T. French* and *William I. Garrison*.

For the defendant, *Babcock & Champion* and *Bourgeois & Coulomb*.

PER CURIAM.

This is defendant's rule to show cause why a verdict by a jury against the defendant and in favor of the plaintiff for $10,000 should not be set aside and a new trial ordered.

The plaintiff was a tenant of the defendant, occupying the second floor of the building called an apartment house, the said building being occupied by several tenants. At the rear of the building was a stairway with landing or platform at each back door. The use intended to be made of this stairway and platform, with the exception of using it as a place to put garbage cans for removal by the janitor, is disputed, though we think this dispute does not 'enter into the issue. There was a railing around the platform. Plaintiff was previously partly crippled in her ankle and also it seems had a defective back due to infantile paralysis. She went out to put some papers in the garbage cans and says that the garbage that was there had not been removed and as she was placing the papers for removal as garbage she slipped on the platform and grabbed for the railing which broke with her and she thus was thrown to the ground. The complaint alleges negligence in that the defendant was under the duty of keeping the premises reasonably safe for the proper use and enjoyment of the plaintiff but "wholly failed and neglected to do so but permitted and caused a certain back porch to become worn out, unfit for use and unsafe and insecurely fastened and dilapidated to such an extent that when the said plaintiff was using the said porch the railing enclosing the same and appurtenant thereto gave way because of the facts and conditions hereinbefore mentioned, so that the said plain-

tiff fell," &c. The judge in charging the jury specifically charged that the plaintiff could *not* recover because of the *failure* of the defendant to have the porch *cleared of garbage,* that the plaintiff alleged that her fall was because of the defective condition of the *railing* and that it is upon that defect, if any, her recovery should be had. His language on this point was in part as follows: "Might it have reasonably been foreseen by the defendant that the condition of her porch railing would have led to the result which happened in this case? Was that which happened such a happening as occurs in the ordinary state of things? Was there another culpable cause, an efficient agency, intervening between the breaking of the rail and the subsequent fall? From the evidence and the just inferences you draw from the proven facts, do you find that the slipping on the garbage precipitated the plaintiff against the rail with such force as to break a railing in a reasonably safe state of preservation and repair, or do you find that the slipping was only incidental, and that a defective condition of the rail was the natural and proximate cause? If the slipping on the garbage was the natural and proximate cause, then you must find a verdict of no cause of action. If you find the defective condition of the rail to have been the natural and proximate cause, then you will go to the next proposition with which I shall deal."

Of the seven reasons filed, the fifth and seventh are not framed in accordance with rule 125, and therefore need no consideration. The sixth, that the verdict was excessive, and the fourth, that the verdict was contrary to the charge of the court, are not argued. The second, that the verdict was against the weight of evidence, will be presently considered, as will also the first, that the court refused to direct a verdict for the defendant on the ground of assumption of risk by the plaintiff, and contributory negligence on the part of the plaintiff; that the breaking of the rail was not the natural and proximate cause of the accident; that there was no proof in the case to support the allegations of the complaint; and the third, that the jury should have found for defendant for the same reasons as specified in number 1.

It will be observed that the case in most of its fundamental features is similar to *Charney* v. *Cohen*, 94 *N. J. L.* 381; *affirmed*, 95 *Id.* 538, and to *Bolitho* v. *Mintz*, 106 *Id.* 449. The judge assumed, and we think properly, that the jury would find that the rear balcony in question was for the common use of the tenants, and that plaintiff was in the act of using it for a purpose authorized by the landlord. Naturally it would be the duty of the latter to use reasonable care in providing a protection against falling that would be reasonably adequate to meet any strain that should fairly be anticipated as resulting from such use. In Charney *v.* Cohen, plaintiff's decedent was leaning against the railing while sweeping snow. In Bolitho *v.* Mintz, plaintiff put a strain on a clothesline attached to a post to which the rail was fastenend, and the post gave way, carrying the railing with it. In *Smith* v. *Mountain Ice Co.*, 74 *Id.* 26, it was held that the trial court erred in assuming that the railing there in question was provided to meet the strain of a workman falling backward against it because his ice hook slipped, and that this particular question was for the jury. We think a similar situation existed in the present case, and that the judge was right in asking the jury whether on the evidence they found the rail was apparently designed to withstand the shock of a tenant slipping, and clutching at it for support.

The next question in order is whether, assuming the jury found as above, the defendant negligently failed to provide and maintain a railing sufficient for that purpose. The evidence is, as usual, in conflict; but it indicates a railing two by three inches in cross section, about seven feet long, and nailed down at the ends to the top of posts. The witness Crawford testified that he nailed down the ends, which were loose in August, 1926, six months before the accident; that it was then "safe to a certain extent" but "looked bad to me. I judge about two foot from the end next to Texas avenue was a very bad looking place * * * it looked more like a knot that would be somewhat rotten." William Bell, former janitor, said the rail was "always good." On cross-examina-

tion that he did not remember seeing any knot. Fenton, a carpenter, called for defendant, said he had gone over the rails as usual, in November, 1926, that he would have noticed any defect and there was none that he saw. Hudson, a painter, testified to painting the structure in November, and that the stairway was "in first class condition." There was considerable testimony to the effect that the structure generally was shaky and in poor order, which the court admitted over exception, but the point is not now raised. A reading of the testimony shows clearly that a jury question as to the defective condition of the railing, either called to the attention of defendant, or existing for such a period that it should have been observed and rectified, was presented, and creates the impression that the jury did not disregard the weight of evidence in finding that it existed and that defendant was chargeable with it.

It is argued that plaintiff assumed the risk, and the case of *Saunders* v. *Smith Realty Co.*, 84 *N. J. L.* 276, is relied on. But in that case there was no evidence of invitation. In this case the evidence is explicit on that point. Contributory negligence was for the jury, and their finding on that point should not be lightly questioned here. As to the requests to charge, they were either adequately covered or properly refused, and in view of the foregoing discussion need no specific notice.

The rule will be discharged.