BAER, A MINOR, APPELLEE, *v.* DEKAY, APPELLANT.

(Decided March 6, 1939.)

*Messrs. Holloway, Peppers & Romanoff,* for appellee.
*Messrs. Denman, Miller & Beatty,* for appellant.

OVERMYER, J. Appellee, Robert Baer, a minor, by Carl C. Baer, as father and next friend, recovered a verdict and judgment in Common Pleas Court in the sum of $5,000 against appellant, Belle DeKay, also known as Cora Belle DeKay, for injuries sustained by him on June 29, 1937. On that date Robert Baer with others, under the direction and pay of one Spitnale, was engaged in removing old wallpaper and preparing to repaper some rooms in a second-floor apartment in premises owned by appellant in Toledo, Ohio, and in the course of his work he went onto a rear second-story porch, came in contact with the wooden porch railing which gave way and broke, precipitating him to the ground some 20 feet below.

This appeal seeks a reversal of the judgment, and the assigned errors complained that the court should have sustained a demurrer to the evidence on the ground that plaintiff's petition on its face showed him guilty of negligence as a matter of law; error in not directing a verdict for defendant; error in not entering judgment notwithstanding the verdict; error in not granting a new trial; that the verdict is against the weight of the evidence and contrary to law; error in refusing a special charge and error in the general charge.

On the day mentioned, Robert Baer and another young man were using a portable steam boiler located on the ground at the rear of appellant's premises to generate steam, which was then conducted by pressure through a hose up through an upstairs window and by means of a spray nozzle applied to the old wallpaper to facilitate removal of it. The steam pressure became low and both men went down by way of a rear stairway from the rear porch to the boiler to fire up; then Robert returned by way of the stairs and porch to the upstairs rooms and discovered that the nozzle on the hose was leaking steam. He thereupon stepped

out on the porch through a door directly to a point near the wooden porch railing opposite the door and called to the other man to throw up a wrench. The other man obtained a wrench and cast it up toward the place where Robert was standing, near the railing but not against it, and as Robert reached out to grasp the wrench when it should come to that level, his body came in contact with the porch railing and the railing broke and gave way, precipitating him to the ground, resulting in a broken vertebrae and other serious injuries.

Appellant contends:

1. That appellant had not employed Robert Baer to do the work but had employed Spitnale to do the work, without giving him any authority to employ Robert Baer, or anyone else to do it for him; that Spitnale was not an independent contractor but an employee, unauthorized to employ others on the job, and therefore Robert was a trespasser on the premises.

On this point the evidence is that while appellant's agreement was with Spitnale with reference to the work, yet he testifies that appellant was told that he had other jobs going at the time, with a number of men employed, and that he would employ men on this job, and this is not denied. Spitnale was to be paid by the hour for removing the old paper and 25 cents per roll for putting on the new paper. He furnished the men, tools and equipment and appellant furnished the paper and sent a man to help take off paper who worked less than an hour, then quit. Nothing is said by appellant in her testimony about reserving control of the work. She was not present exercising any control over it, or of the means and manner of doing the work, or of the tools or appliances to be used or manner of using them. The appellant submitted an interrogatory covering this point in the following words:

"Was the plaintiff upon the premises at 141 Euclid avenue with the consent of the defendant?"

The jury answered in the affirmative. We see no merit in the contention made on the point here discussed.

2. It is claimed that Robert was guilty of negligence as a matter of law in that "through his action with respect to the wooden railing or banister on the easterly side of the porch in question and therein putting the railing to a use for which it was not intended, coupled with the fact that immediately at his right there was a safe stairway for him to descend to the ground and procure the wrench without danger * * *."

This point might properly be argued to a jury on the question of ordinary care, but it does not furnish a basis for a directed verdict. The evidence does not show that appellee "used" the porch railing for any purpose. His testimony stands alone and uncontradicted as to what did happen, and he testifies he did not touch the railing with his hands or his body until he reached out to catch the wrench (which as far as he knows never did come up to his hand) and as he reached out, his body came into contact with the railing and it gave way and threw him to the ground. It is therefore not a case of sitting on the railing, or leaning on it or against it, or chasing or playing tag with someone near it, or any use whatever of the railing as such. His touching the railing at all was incidental, not primary, to what he was engaged in doing. Herein the facts differ from various cases cited by appellant. Nor can we adopt the view presented that a porch railing twenty feet above ground is designed only to mark the outlines or edge of the porch floor. A white or black painted mark would do the same, or a small rope or wire, fastened to standards; but such measures would furnish no feelings of safety or security to those using the porch. A railing in such location is more than

something to look at. It is entirely reasonable to assume that tenants and occupants of the premises, adults and children, and persons having business there, may and will come in contact with it, intentionally, or by accident by slipping or stumbling; and reasonable care must be exercised to have it fairly safe for reasonably anticipated uses. Whether it was so is scarcely ever a law question.

3. It is contended that appellant was not aware of any defective condition of the porch railing. A witness who was a former tenant of the upper apartment here involved, and who had vacated the premises only a short time before, testified that he had called the attention of appellant to the weak and out-of-repair condition of this railing shortly after he moved there, nearly two years before Robert Baer fell, and that he offered to repair it if appellant would furnish the material. His offer was not accepted. He further testified that he repaired it some, but the material was so poor, especially in the uprights, that the nails would not hold. Further, appellant herself testified that she was on the porch in question very frequently—monthly for four or five years before this event—and, being the owner, it was her duty to observe its condition for the safety of persons, tenants, and others, lawfully about it. In fact, appellant was on the porch with Spitnale when he was employed to do the work herein referred to, only a day or two before he began work. There are in evidence as exhibits the parts of the railing which gave way and fell with appellee. An examination readily discloses interior dry rot, splinters, large cracks and holes and a general aged and rotten condition of railing and uprights. Proper and reasonable inspection by the owner would have disclosed these dangerous imperfections, but appellee, not intending to use the railing, would not in the circumstances be expected to make such inspection.

4. The remaining errors assigned relate to the refusal of the court to give a special charge submitted by appellant which related to the subject discussed in No. 1 herein, viz., reservation of control over the work by appellant. In view of what we have said on that subject, it follows that in our opinion the court was correct in refusing this charge. The charge itself could have been refused because it was incomplete. Another complaint relates to the general charge on the same subject, viz., the relationship, under the contract of employment, between appellant, Spitnale and Robert Baer. This also becomes unimportant, because that relationship, so far as Robert Baer was concerned, was clearly that of an invitee, impliedly if not directly, and the jury so found and answered.

We have examined the entire record and considered all claimed errors therein, and our conclusion is that the verdict is not against the manifest weight of the evidence and that no prejudicial errors are shown which require or would justify a reversal of the judgment.

We cite a few of many cases supporting our conclusions, as follows: *Gillespie* v. *Plotka,* 9 N. J. Misc., 1230, 157 A., 175; *Price* v. *Florsheim,* 13 La. App., 298, 127 So., 22; *McGinley* v. *Alliance Trust Co.,* 168 Mo., 257, 66 S. W., 153; *Williams* v. *Dickson,* 122 Minn., 49, 141 N. W., 849.

*Judgment affirmed.*

CARPENTER, J., concurs.
LLOYD, J., not participating.